IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FREDERICK BANKS,** : | CIVIL ACTION NO. 1:21-CV-807 |
| : | |
| Petitioner : | (Judge Conner) |
| : | |
| v. : | |
| : | |
| **M. THOMPSON, WARDEN FCI** : | |
| **ALLENWOOD LOW,** : | |
| : | |
| Respondent : | |

## MEMORANDUM

Presently before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by petitioner Frederick Banks ("Banks"), an inmate confined at the Federal Correctional Institution, Fort Dix, New Jersey. The sole named respondent is R. Thompson,[1] the Warden of the Federal Correctional Institution, Allenwood Low. For the reasons set forth below, the court will dismiss the petition based on Banks' failure to exhaust his administrative remedies.

**I.      Factual Background & Procedural History**

On June 12, 2020, Banks was sentenced in the United States District Court for the Western District of Pennsylvania to an aggregate 104-month term of imprisonment for wire fraud and aggravated identity theft in case number 2:15-CR-168. (See Doc. 8-2 at 2 ¶ 11; see also Doc. 8-2 at 5-8). His projected release date is February 4, 2023, via good conduct time. (See Doc. 8-2 at 2 ¶ 12; Doc. 8-2 at 5-8).

---

[1] The petition (Doc. 1) incorrectly identifies the respondent as "M. Thompson." (See Doc. 8 at 1 n.1).

On May 24, 2013, Banks satisfied and was released from a 123-month aggregate federal term imposed by the United States District Court for the Western District of Pennsylvania in case numbers 03-245 and 04-176. (See Doc. 8-2 at 1 ¶ 6). He began a 3-year term of supervised release. (See id.) On October 23, 2013, a supervised release warrant was issued for Banks in case numbers 03-245 and 04-176, for violating the conditions of his supervised release as a result of the new criminal conduct in case number 2:15-CR-168. (See id. at 1-2 ¶ 7). He was arrested by the United States Marshals Service. (See id.) On November 25, 2013, Banks' supervised release was revoked, and he was sentenced in the United States District Court for the Western District of Pennsylvania to a 14-month term of imprisonment in case number 04-176. (See id. at 3 ¶ 8). Banks received jail credit from October 23, 2013 through November 24, 2013 and satisfied this sentence on October 28, 2014. (See id.) However, he remained in custody for the pending supervised release violation in case number 03-245. (See id.) On October 30, 2014, Banks' supervised release was revoked in case number 03-245 and he was sentenced in the United States District Court for the Western District of Pennsylvania to a term of imprisonment of time-served, to run concurrent with the revocation term imposed in case number 04-176. (See id. at 2 ¶ 9). The time-served sentence in case number 03-245 consisted of two days—October 29, 2014 and October 30, 2014—because that custodial time was not previously credited to another sentence. (See id.) On October 30, 2014, Banks satisfied the revocation term and was released from federal custody. (See id.)

On August 5, 2015, an indictment was filed, and an arrest warrant was issued in the United States District Court for the Western District of Pennsylvania for interstate stalking, which resulted in Banks' charges in case number 2:15-CR-168. (See id. at 2 ¶ 10). On August 7, 2015, an order of temporary detention was filed, and Banks was taken into custody by the United States Marshals Service. (See id.) Since that time, Banks has remained in continuous federal custody. (See id.)

The Bureau of Prisons ("BOP") prepared Banks' sentence computation based on an aggregate 104-month term of imprisonment, commencing the federal term on June 12, 2020 (the date of imposition of the sentence), and awarded him with 1,771 days of prior custody credit from August 7, 2015 (the date of his arrest) through June 11, 2020. (See id. at 2 ¶ 12). As stated, his current projected release date is February 4, 2023, *via* good conduct time. (See id.) Banks' supervision terms in case numbers 03-245 and 04-176 were satisfied in October 2014, prior to the imposition of the current term. (See id. at 2 ¶ 12).

In the instant habeas petition, Banks challenges his sentence computation. (See Doc. 1). He argues that he is entitled to 20 to 32 months of prior custody credit for the "same 2013 conduct" that was not applied toward his current federal term. (See id. at 2, 6-7). For relief, Banks seeks release from custody and "at least 20 months prior jail credit." (See id. at 8).

Respondent argues that the petition should be dismissed for two reasons. First, Banks failed to exhaust his administrative remedies by failing to file an appeal to the BOP General Counsel after the Regional Director denied his appeal. (See Doc. 8 at 6-9). Second, respondent argues that Banks' sentence computation is

3

correct, and he was awarded prior custody credit in accordance with 18 U.S.C. § 3585. (See id. at 9-12). Because the record establishes that Banks did not exhaust his administrative remedies before initiating this action, we do not reach respondent's alternative argument.

## II.   Discussion

A habeas petition under Section 2241 is the proper vehicle for an inmate to challenge "the fact or length of confinement," see Presser v. Rodriguez, 411 U.S. 475, 494 (1973), or the "execution" of his confinement, see Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241-42 (3d Cir. 2005). A federal habeas court may extend a writ of habeas corpus to a federal inmate if he demonstrates that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2241(c)(3).

Respondent seeks to dismiss the instant petition based on Banks' failure to exhaust administrative remedies. (See Doc. 8). Despite the absence of a statutory exhaustion requirement, courts have consistently required a petitioner to exhaust administrative remedies prior to bringing a habeas claim under Section 2241. Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996). In the typical case, the failure to exhaust all stages of the administrative remedy system prior to the filing of a habeas petition under 28 U.S.C. § 2241 is a proper basis for dismissal. See id. at 761-62. Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3)

4

providing agencies the opportunity to correct their own errors fosters administrative autonomy." Id. (citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981) (*per curiam*)).

Notably, exhaustion of administrative remedies is not required where exhaustion would not promote these goals. See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, No. 00-2958, 2000 WL 1022959, at *2 (E.D. Pa. July 10, 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

The BOP has established a multi-tier administrative remedy system whereby a federal prisoner may seek formal review of any aspect of his imprisonment. See 28 C.F.R. §§ 542.10-542.19 (2021). If an issue raised by the inmate cannot be resolved through this administrative remedy system, the BOP "will refer the inmate to appropriate statutorily mandated procedures." Id. § 542.10(c). The system first requires an inmate to present their complaint to staff before filing a request for administrative relief, which staff shall attempt to informally resolve. See id. § 542.13(a). If informal resolution is unsuccessful, an inmate may file a formal written complaint to the Warden, on the appropriate form, within twenty calendar days of the date of the event or occurrence and the Warden shall provide a response within twenty calendar days. Id. §§ 542.14, 542.18. If the inmate is dissatisfied with the

Warden's response, he may file an appeal to the Regional Director within twenty calendar days. Id. § 542.15(a). The Regional Director has thirty calendar days to respond. Id. § 542.18. Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may be appealed to the BOP's General Counsel at Central Office within thirty calendar days from the date of the Regional Director's response. Id. § 542.15(a). No administrative remedy appeal is considered fully exhausted until reviewed by the BOP's Central Office. Id. § 542.15(a).

The BOP maintains a database known as the SENTRY Inmate Management System ("SENTRY"). (See Doc. 8-2 at 1 ¶ 2). In the ordinary course of business, computerized indexes of all formal administrative remedies filed by inmates are maintained by the Institution, Regional, and Central Offices. SENTRY generates a report titled "Administrative Remedy Generalized Retrieval" which allows codes to be entered to identify the reason or reasons for rejecting a request for administrative relief. (See id. at 3 ¶ 23).

Banks' Administrative Remedy Generalized Retrieval report indicates that, on November 20, 2020, he filed Administrative Remedy Number 1057800-F1 at FCI-Oakdale requesting prior custody credit. (See Doc. 8-2 at 67; Doc. 1-1 at 2). On December 15, 2020, the institution denied the request. (See Doc. 8-2 at 67; Doc. 1-1 at 3). On December 21, 2020, Banks appealed the denial to the Regional Office, designated as Administrative Remedy Number 1057800-R1. (See Doc. 8-2 at 67; Doc. 1-1 at 1). On February 26, 2021, the appeal was denied. (See Doc. 8-2 at 67). Banks did not appeal the denial to the Central Office and failed to take any further action with respect to this Administrative Remedy.

Banks argues that the administrative remedy process was effectively unavailable because he never received a response from the Regional Office, and he filed an appeal to the Central Office but failed to receive a response. (See Doc. 1 at 3; Doc. 9 at 1). The record indicates otherwise. Indeed, nothing in the record before the court establishes that Banks pursued an administrative remedy to the Central Office. According to the Administrative Remedy Generalized Retrieval, Banks appealed Administrative Remedy Number 1057800 to the Regional Office, but unequivocally failed to appeal to the Central Office. Additionally, the purported failure to respond to an appeal does not excuse Banks from exhausting his administrative remedies. To the contrary, the regulations explicitly provide that "[i]f the inmate does not receive a response within the time allotted for reply . . . the inmate may consider the absence of a response to be a denial at that level." See 28 C.F.R. § 542.18; see also Moscato, 98 F.3d at 762 (concluding that there was no cause for default of administrative remedies where petitioner failed to allege any "external impediment" to filing a timely appeal).

Despite being well aware of the BOP's exhaustion requirements, Banks failed to "avail[] himself of every process at every turn (which would require all appeals to be timely pursued, etc.)." Spruill v. Gillis, 372 F.3d 218, 228 (3d Cir. 2004). Banks has not identified BOP actions that would clearly and unambiguously violate statutory or constitutional rights, and he has not set forth any facts or advanced an argument that would permit this court to find that exhaustion of his administrative remedies would subject him to irreparable injury. Absent proper exhaustion, Banks' claims are procedurally defaulted, and the habeas petition must be

dismissed. To hold otherwise would frustrate the purposes of the exhaustion doctrine by allowing Banks to invoke the judicial process despite failing to complete administrative review.

### III.  Conclusion

The petition for writ of habeas corpus will be dismissed without prejudice. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     October 5, 2021